UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ESTATE OF DERRICK ELLISON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | SA-24-CV-1386-FB (HJB) |
| | § | |
| COUNTY OF BEXAR; TEXAS SHERIFF | § | |
| JAVIER SALAZAR; DOES 1-50; BEXAR | § | |
| COUNTY HOSPITAL d/b/a University | § | |
| Health Systems; CORPORAL CARLOS | § | |
| MARROQUIN Badge #2033, Bexar | § | |
| County Sheriff's Office, Bexar County Jail | § | |
| Unit Officer; SERGEANT FELIPE | § | |
| CADENA Badge #2750, Bexar County | § | |
| Sheriff's Office, Bexar County Jail, Floor | § | |
| Sergeant; and LT. GABRIEL VILLARREAL, | § | |
| Badge #4431, Bexar County Sheriff's | § | |
| Office, Bexar County Jail, Shift Commander, | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns three dispositive motions: the Rule 12(b)(6) Motion to Dismiss Seventh Amended Complaint or in the Alternative 12(c) Motion for Judgement on the Pleadings, filed by Defendant Bexar County Hospital District, d/b/a University Health System ("the Hospital") (Docket Entry 66); the Motion to Dismiss Plaintiff's Seventh Amended Complaint filed by Defendants Bexar County, Texas ("the County") and Sheriff Javier Salazar (Docket Entry 71); and the Motion to Dismiss Plaintiff's Seventh Amended Complaint filed by Defendants Corporal Carlos Marroquin, Lieutenant Gabriel Villareal, and Sergeant Felipe Cadena (collectively, the "Officer Defendants") (Docket Entry 72). Pretrial matters have been referred to the undersigned. (*See* Docket Entry 22.)

For the reasons discussed below, I recommend that the Hospital and Officer Defendants' motions (Docket Entries 66 and 72) be **GRANTED** and that the County and Sheriff's motion (Docket Entry 71) be **GRANTED IN PART**.

## I.     Jurisdiction.

Plaintiff asserts constitutional claims under 42 U.S.C. § 1983 against all of the Defendants; disability-based discrimination claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Rehabilitation Act ("Rehab Act"), 29 U.S.C. § 794, against the County and Hospital; and wrongful death claims, under § 71.002 of the Texas Civil Practice and Remedies Code, against the County and Hospital.  The Court has original jurisdiction over the § 1983, ADA, and Rehab Act claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the wrongful-death claims pursuant to 28 U.S.C. § 1367.  The undersigned has authority to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## II.     Background.

On June 25, 2022, Derrick Ellison was arrested and charged with misdemeanor trespassing. (Docket Entry 63, at 4.)  He was unable to afford his $1,500 bail, so he was kept in the custody of the Bexar County Jail as a pre-trial detainee.  (*Id.*)  Ellison had been detained there just four months earlier regarding an unrelated offense.  (*Id.* at 5; Docket Entry 71-1, at 2.)  Sometime during that first round of detention, Ellison was assaulted by another inmate.  (Docket Entry 63, at 5.)

On or about July 17, 2022, Ellison, who had been diagnosed with schizophrenia, was observed "throwing paper at other inmates and trying to take their property into his cell" because he believed that "Martin Luther King told [him] to do it."  (Docket Entry 71-1, at 3–4.)  He was placed on "Mental Observation" status and transferred to a new cell; these conditions remained in place for the rest of his time at the jail.  (*Id.*)

2

On December 4, 2022, at 8:15 P.M., Ellison was "found by jail official(s) unconscious on the floor of his jail cell alone." (Docket Entry 63, at 7; Docket Entry 71-2, at 2.) Ellison "had a contusion to his right eye." (Docket Entry 71-2, at 2.) When Ellison regained consciousness, he told one of the jail's responding officers that he was assaulted the day before, "but [he] did not say [during] what shift or who assaulted him." (*Id.*)

Bexar County EMS personnel arrived at approximately 8:26 P.M. and transported Ellison to the Hospital, where he was admitted for treatment at approximately 9:16 P.M. (Docket Entry 63, at 7; Docket Entry 72-2, at 2.) At approximately 2:27 A.M. on December 5, Ellison was pronounced dead. (Docket Entry 63, at 7–8.) An autopsy report prepared later that morning stated that the most likely cause of death was "sepsis due to cellulitis of the right orbit and right side of the face." (Docket Entry 71-3, at 5.) According to the report, Ellison still had "pacer, defibrillator pads and EKG pads on [his] chest" at the time of the autopsy, along with "internal CPR related rib fractures." (*Id.* at 2.) He also had "visible swelling of the right side of the face." (*Id.* at 3.) The report noted that Ellison "claim[ed] to have been 'jumped' or assaulted prior to the development of the facial swelling." (*Id.* at 5.) While it acknowledged that "[t]his claim ha[d] not been substantiated," the report stated that such "injuries to the right side of the face prior to or during the early stages of infection c[ould ]not be entirely excluded," although they may instead have been "due to [his] collap[sing] secondary to [the] infection and hypoglycemia." (*Id.*)

Plaintiff, the Estate of Ellison, filed suit on December 4, 2024. (Docket Entry 1.)[1] After several amendments, Plaintiff's Seventh Amended Complaint is now the operative pleading before

---

[1] Although the named Plaintiff is styled as the "Estate of Derick Ellison," the Seventh Amended Complaint clarifies that the real party in interest is Detra Washington, as the Administrator of the Estate of Derick Ellison. (Docket Entry 63, at 2.) This is important, as "a decedent's estate is not a legal entity and may not properly sue or be sued as such." *Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 210 (5th Cir. 2016) (citation modified). It is also

3

the Court.  (*See* Docket Entry 63.)  It asserts § 1983 claims against all of the Defendants for failure

to protect, failure to train, and failure to discipline or supervise.  (*Id.* at 13–22.)  The complaint

also asserts wrongful death claims based on negligence, as well as disability-based discrimination

claims under the ADA and Rehab Act against the County and Hospital.  (*Id.* at 22–30.)[2]  All of the

Defendants have moved to dismiss Plaintiff's Seventh Amended Complaint for failure to state a

claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Docket Entries 66, 71–72.)  Plaintiff

has filed responses to each of the motions.  (Docket Entries 73, 76, and 81.)

## III.     Applicable Legal Standard.

"A court must dismiss a complaint as a matter of law when the plaintiff fails 'to state a

claim upon which relief can be granted.'"  *Hernandez v. Causey*, 124 F.4th 325, 331 (5th Cir. 2024)

(quoting FED. R. CIV. P. 12(b)(6)), *cert. denied*, 145 S. Ct. 1930 (2025).  "Dismissal can be based

---

crucial because the Court has subject matter jurisdiction over Plaintiff's § 1983, ADA, and Rehab claims only if Plaintiff has statutory standing under the Texas Survival Statute, *id.* at 208–09 and n.8, which "provides that only a personal representative, *administrator*, or heir may sue on behalf of an estate," *id.* at 210 (emphasis added). Similarly, the Court's subject matter jurisdiction over Plaintiff's wrongful-death claims hinges on whether Plaintiff has statutory standing under Texas's Wrongful Death Statute. While estates do not, an administrator may. *See, e.g.*, *Morin v. Ford Motor Co.*, No. 3:07-CV-1700-L, 2009 WL 2486027, at *8 (N.D. Tex. Aug. 12, 2009) ("[A] wrongful death claim belongs exclusively to the statutory beneficiaries, and it does not benefit the estate[;] . . . [t]he wrongful death statute, however, vests estate administrators . . . with standing to bring and prosecute a wrongful death action.").

[2] Although Plaintiff purports to name Does 1–50 as additional Defendants (*see* Docket Entry 63, at 1), the Seventh Amended Complaint does not actually assert any claims against such unknown Defendants (*see id.* at 13–30). Regardless, any such claims would be barred by the applicable two-year statute of limitations. *See Ford v. Anderson Cnty., Tex.*, 102 F.4th 292, 318 (5th Cir. 2024) ("In Texas, the statute of limitations for 42 U.S.C. § 1983 claims is two years."). This is because pseudonymous parties are merely temporary place-holders and "an amendment to substitute a named party for a John Doe does not relate back under Rule 15(c)," which only permits the tolling of the statute of limitations when there is a "*mistake* concerning the identity of a party." *Winzer v. Kaufman Cnty.*, 916 F.3d 464, 471 (5th Cir. 2019) (citation modified). And "failing to identify individual defendants cannot be characterized as a mistake." *Id.* (citation modified). Accordingly, any claims against Doe Defendants 1–50 should be dismissed with prejudice.

either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Sims v. Allstate Fire & Cas. Ins. Co.*, 746 F. Supp. 3d 417, 420 (W.D. Tex. 2024). To survive dismissal, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the well-pleaded facts allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

In ruling on a 12(b)(6) motion, "the Court assumes the truth of well-pleaded factual allegations and reasonable inferences therefrom." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (citation modified). The Court does not assume the truth of "legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement," *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc) (citation modified), as those "are not well-pleaded facts for purposes of evaluating a complaint," *Alaska Elec. Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975, 981 (5th Cir. 2019) (citation modified).

In determining whether to grant a 12(b)(6) motion to dismiss, the Court "must not go outside the pleadings." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). Generally, that means the Court's inquiry is "limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted). But the Court "may also consider documents attached to either a motion to dismiss or an opposition to that

motion when the documents are referred to in the pleadings and are central to a plaintiff's claims."

*Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).[3]

## IV.    Discussion.

This Report and Recommendation begins by addressing Plaintiff's wrongful death claims against the County and Hospital.  It then turns to Plaintiff's ADA and Rehab claims against the County and Hospital.  Finally, it addresses Plaintiff's § 1983 claims against all of the Defendants.

### A.    *Wrongful Death Claims.*

Plaintiff asserts wrongful death claims against both the County and the Hospital.  (*See* Docket Entry 63, at 26–30.)  Both seek dismissal based on governmental immunity.  (Docket Entry 66, at 9–10; Docket Entry 71, at 18–19.)

"Governmental immunity generally protects municipalities and other state subdivisions from suit unless the immunity has been waived by the constitution or state law."  *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019).  The Texas Tort Claims Act ("TTCA") waives governmental immunity for personal injury and death, if "proximately caused by a condition or use of tangible personal property."  *Id.* at 509.

In this case, Plaintiff alleges that the County is liable for its "failure to deploy diagnostic tools such as X-rays or blood tests to detect sepsis" and "refusal to administer antibiotics."  (Docket Entry 63, at 26.)  Plaintiff similarly alleges that the Hospital is liable for its failure "to timely

---

[3] The Hospital alternatively seeks judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (*See* Docket Entry 66.) A 12(c) motion can only be filed "[a]fter the pleadings are closed," FED. R. CIV. P. 12(c)—*i.e.*, "upon the filing of a complaint and answer." *Nortel Networks Ltd. v. Kyocera Wireless Corp.*, No. CIV.A.3:02-CV-32-D, 2002 WL 31114077, at *1 (N.D. Tex. Sept. 20, 2002) (citing FED. R. CIV. P. 7(a); 5A WRIGHT & MILLER'S FEDERAL PRACTICE AND PROCEDURE § 1367 (5th ed. 1990)). As no answers have been filed in this case— only Rule 12 motions—the pleadings are not yet "closed." Accordingly, the Hospital's motion is exclusively treated as a 12(b)(6) motion to dismiss for failure to state a claim.

evaluate, diagnose, admit, escalate, and treat [Ellison's] serious traumatic injuries and active infections in accordance with accepted medical standards." (*Id.* at 28.) In other words, Plaintiff's wrongful death claims against the County are predicated on its alleged non-use of tangible property and its wrongful death claims against the Hospital are predicated on alleged inactions constituting medical malpractice. Such claims fail to overcome Defendants' governmental immunity. "A claim of mere non-use is insufficient to waive immunity; actual use is required." *McKenzie*, 578 S.W.3d at 513 (citation modified). "Likewise, general medical malpractice claims or claims for errors in medical judgment, such as failure to perform the necessary medical treatment" do not effect a waiver of immunity. *Morrison v. Asamoa*, 648 S.W.3d 628, 639 (Tex. App.—Eastland 2022, no pet.) (citation modified). "Nor does a failure to timely diagnose a patient's condition, or to order the appropriate tests in order to make a diagnosis, waive immunity under the TTCA." *Id.*

As Plaintiff has not plausibly alleged a waiver of governmental immunity under the TTCA, the wrongful-death claims against the County and Hospital should be dismissed with prejudice. *See Anthology, Inc. v. Tarrant Cnty. Coll. Dist.*, 136 F.4th 549, 553 (5th Cir. 2025) ("[S]tate-law sovereign immunity and governmental immunity cannot have jurisdictional effect in federal court[;] . . . . if these state-law immunities apply at all in federal court under the *Erie* doctrine, . . . they must be treated as non-jurisdictional, merits-based defenses."); *Gay v. City of Wichita Falls*, 457 S.W.3d 499, 504 (Tex. App.—El Paso 2014, no pet.) ("If the suit is barred by governmental immunity, dismissal with prejudice is mandatory.").

**B.  *ADA and Rehab Act Claims.***

Plaintiff asserts claims against the County and Hospital under Title II of the ADA, 42 U.S.C. § 12132, and § 504 of the Rehab Act, 29 U.S.C. § 794. (Docket Entry 63, at 22–26.) "The remedies, procedures[,] and rights available under [T]itle II [of the ADA] are [identical to] those

available under [§] 504 [of the Rehab Act]." *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 676 (5th Cir. 2004).[4] Thus, the Court may "consider Plaintiff's ADA and Rehab Act claims jointly as though they were a single claim." *Prescott v. Johnson*, No. 6:18-CV-577, 2022 WL 672694, at *6 (E.D. Tex. Mar. 7, 2022), *aff'd*, No. 22-40255, 2023 WL 3723632 (5th Cir. May 30, 2023).

To state a claim under either statute, Plaintiff must plausibly allege "(1) that [Ellison] ha[d] a qualifying disability; (2) that he [wa]s being denied the benefits of services, programs, or activities for which the public entity [wa]s responsible, or [wa]s otherwise discriminated against by the public entity; and (3) that such discrimination [wa]s by reason of his disability." *Miraglia v. Bd. of Supervisors of Louisiana State Museum*, 901 F.3d 565, 574 (5th Cir. 2018). The third element can be satisfied "by showing that the disability and its consequential limitations were known by the covered entity, and the entity failed to make reasonable accommodations." *Carter as next of friend of Carter v. City of Shreveport*, 144 F.4th 809, 814 (5th Cir. 2025); *see Prescott*, 2022 WL 672694, at *6 ("Failure to make the reasonable modifications necessary to adjust for the unique needs of disabled persons can constitute intentional discrimination.") (citation modified); *see also Melton*, 391 F.3d at 673 ("[P]ublic entities generally are required . . . to make reasonable modifications to avoid discrimination.") (citation omitted).

As applied to public entities like a County jail, the duty to accommodate does "not require prisons to provide *new* services or programs for disabled prisoners," but it does require that they "make reasonable modifications so that a disabled prisoner can have meaningful access to *existing*

---

[4] The difference between the statutes is that "the ADA applies only to public entities" while the Rehab Act applies to "any federally funded programs or activities." *Madron v. Massey*, No. 1:22-CV-31-BU, 2024 WL 4125382, at *9 (N.D. Tex. Aug. 5, 2024) (citation modified), *report and recommendation adopted*, No. 1:22-CV-31-C, 2024 WL 4127575 (N.D. Tex. Sept. 9, 2024). Congress passed the ADA "to extend the protections of the Rehab[] Act to cover all programs of state or local government," and not just those receiving federal funds. *Melton*, 391 F.3d at 676.

8

public services or programs." *Cleveland v. Gautreaux*, 198 F. Supp. 3d 717, 736 (M.D. La. 2016) (citation modified). "An accommodation is reasonable if it does not impose undue financial or administrative burdens or fundamentally alter the nature of the service, program or activity." *Smith v. Harris Cnty., Tex.*, 956 F.3d 311, 317 (5th Cir. 2020).

Plaintiff claims that the County discriminated against Ellison on the basis of his disability in three ways. (Docket Entry 63, at 22–23.) First, "[t]he jail[] refus[ed] . . . to transfer [him] to a mental health facility . . . . [and] placed him in a general population cell instead of protective housing . . . . despite his documented history of schizophrenia and psychosis." (*Id.*) Second, that "jail staff ignored" or "denied" his requests for "antipsychotic medications and therapy sessions." (*Id.* at 23.) And lastly, that the "[j]ail staff dismissed visible signs" of his injuries and "refus[ed] to provide medical treatment or protective measures" because they "dismissed his injuries as 'exaggerations' or 'psychotic episodes.'" (*Id.* at 24–25.) For instance, when Ellison "reported being 'jumped' on December 3, 2022," Plaintiff alleges that "jail staff documented his claims as 'delusional' and refused to investigate, despite his swollen face and impaired vision." (*Id.*)

As to the Hospital, Plaintiff's ADA and Rehab Act claims must be dismissed. The Hospital correctly points out that all of Plaintiff's allegations to support its claims concern the acts and omissions of *jail* staff. (Docket Entry 66, at 5.) This makes sense, since all of the pertinent acts and omissions occurred in the jail, and "Texas law specifically imposes the duty on the Sheriff of each county to 'safely keep all prisoners committed to the jail.'" (*Id.* at 6 (quoting TEX. LOCAL GOV'T CODE § 351.041).) Accordingly, the ADA and Rehab claims against the Hospital should be dismissed with prejudice.

The ADA and Rehab Act claims against the County require deeper analysis. The County offers three arguments for dismissal. First, it argues that Plaintiff cites "no authority [for the

proposition] that [the] County had an obligation to 'transfer' Ellison to an unspecified 'mental health facility.'"  (Docket Entry 71, at 17.)  As mentioned above, the ADA and Rehab Act's requirements are "limited to programs, services[,] and activities 'of a public entity.'"  *Williamson v. Larpenter*, No. CV 19-254, 2019 WL 3719761, at *14 (E.D. La. July 15, 2019) (quoting 42 U.S.C. § 12132), *report and recommendation adopted*, No. CV 19-254, 2019 WL 3718135 (E.D. La. Aug. 7, 2019).  Thus, "if the entity does not provide the program, service[,] or activity as a general matter, then the entity has no duty . . . to provide an accommodation for disabled persons"—since the purpose of the statutes "is to provide equal access to individuals with disabilities to opportunities and benefits, not to provide privileges withheld from everyone else." *Id.* at *15.  Because there is no allegation in Plaintiff's complaint that the County operated any separate mental health facilities as one of the programs, services, or activities available to its inmates, Plaintiff's first alleged basis of discrimination fails to support an ADA or Rehab Act claim.

Second, the County argues that "it is simply not true that Ellison was in a general population cell or that he was not given specialized supervision or mental health care."  (Docket Entry 71, at 17.)  According to the County, its "classification and health care records"—which the County has attached to its motion—"confirm that Plaintiff was protected in a non-general population cell and was under mental observation status for the final five months of his detention." (*Id.*)  The Court may consider those records because they are "referred to in the pleadings and are central to a plaintiff's claims."  *Brand Coupon Network*, 748 F.3d at 635.  (*See* Docket Entry 63, at 4–5 (alleging that jail records confirm that Ellison was "placed within the general population of the jail" and did not receive "heightened monitoring").)

The records reveal that in July of 2022, Ellison was transferred to a "CC" cell, where he was kept for "mental observation"—an arrangement that lasted until December 4, 2022, when he was taken to the Hospital.  (Docket Entry 71-1, at 2–3.)  Based on these incorporated records, Plaintiff has not plausibly alleged that the County failed to accommodate Ellison's disability by putting him in a general population cell and refusing to monitor his mental health.  Accordingly, Plaintiff cannot state an ADA or Rehab Act claim on those grounds either.

Third, the County argues that Plaintiff failed to allege sufficient facts from which the Court can infer a connection between Ellison's disability and the alleged denial of medical care following his injuries.  (Docket Entry 71, at 17–18.)  Again, the County relies on documents referred to by Plaintiff's complaint.  Plaintiff's allegations describe the jail's records as confirming "that jail staff 'refused to investigate' Ellison's claims that he was 'jumped', instead 'document[ing] his claims as 'delusional' and 'dismissing his injuries as exaggerations.'" (*Id.* at 18 (quoting Docket Entry 63, at 25).)  However, the County presents the records themselves which show that the incident was flagged "for further investigation," to be carried out on December 5, 2022.  (*Id.*)  The records further show that Ellison was quickly transported to the Hospital when he was discovered on the floor of his cell.  (*Id.*)  There are no indications in the records that jail staff dismissed Ellison's injuries—or his alleged assault—as exaggerations or delusional.  Accordingly, Plaintiff cannot state a plausible ADA or Rehab Act claim on the grounds that his injuries were dismissed on account of his disability.

The County does not address, however, Plaintiff's allegations that jail staff denied his requests for "antipsychotic medications and therapy sessions." (Docket Entry 63, at 23.)  It may be that the County does not offer therapy sessions as one of its programs, services, or activities for inmates—in which case the County would have had no duty under the ADA or Rehab Act to

11

provide such services to Ellison. *See Williamson*, 2019 WL 3719761, at \*14. But the County has not made that argument. Nor does the County explain why providing Ellison with basic medications for treating his schizophrenia would have posed an undue burden, such that it could deny him such treatments without violating its duty to provide reasonable accommodation. And no records have been referred to by Plaintiff—or produced by the County—indicating that Ellison actually did receive such medications. Thus, drawing all inferences in Plaintiff's favor, Plaintiff has plausibly alleged ADA and Rehab Act discrimination by the County based on its alleged failure to accommodate Ellison with reasonable medications and therapy sessions. Accordingly, to the extent that Plaintiff predicates its ADA and Rehab Act claims on those allegations, the claims should be permitted to proceed. In all other respects, the County's motion to dismiss the ADA and Rehab Act claims should be granted.

### C. *Section 1983 Claims.*

"Section 1983 creates a private right of action for redressing violations of federal law by those acting under color of state law." *Loera v. Kingsville Indep. Sch. Dist.*, 151 F.4th 813, 818 (5th Cir. 2025). Thus, to state a § 1983 claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).

Plaintiff brings claims against both individual Officer Defendants and the Hospital and County as Municipal Defendants. Each set of claims is considered below.

### 1. *The Officer Defendants.*

An individual defendant "acts under color of state law when he abuses the position given to him by the State." *Tyson v. Sabine*, 42 F.4th 508, 521 (5th Cir. 2022). Here, the Officer

Defendants argue that they are entitled to dismissal on the ground that Plaintiff was required to "specify the personal involvement of each" Officer in order to state plausible § 1983 claims against them, but ultimately "do[es] not describe their actions at all." (Docket Entry 72, at 6.) Remarkably, they are correct.

Plaintiff's Seventh Amended Complaint only mentions the Officer Defendants in: (1) the style of the case (Docket Entry 63, at 1); (2) the section listing each of the named parties (*id.* at 3); (3) the caption for the section dedicated to Plaintiff's § 1983 claims (*id.* at ___) ; and (4) the general introductory paragraph stating that Plaintiff "brings suit against [the] County, Sheriff Salazar, [the Hospital], Corporal Marroquin, Sargent Cadena, and Lt. Villareal, pursuant to 42 U.S.C. § 1983 for its [sic] Failure to Protect, Failure to Train, Failure to Discipline/Supervise and for maintaining unconstitutional policies, customs, and practices" (*id.* at 13). Because Plaintiff alleges no facts from which the Court could reasonably infer that the Officer Defendants violated Ellison's constitutional or other federally protected rights, Plaintiff's § 1983 claims against the Officer Defendants should be dismissed with prejudice.

2.     *The Municipal Defendants.*

Municipalities, like the County and Hospital, "may not be held liable under § 1983 on a basis of vicarious liability." *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017). Instead, "to establish municipal liability (a *Monell*[5] claim) under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken pursuant to an official municipal policy." *Hutcheson v. Dallas Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) (citation modified). "Official municipal policy" includes not only the decisions of a government's lawmakers and the

---

[5] *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978).

acts of its policymaking officials, but also customs—"practices so persistent and widespread as to practically have the force of law." *Hicks-Fields*, 860 F.3d at 808 (citation modified). Thus, to state a plausible *Monell* claim, Plaintiff must allege sufficient facts from which the Court can reasonably infer the existence of "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom." *Martinez v. Nueces Cnty., Tex.*, 71 F.4th 385, 389 (5th Cir. 2023) (citation modified). "To get past the pleading stage, a complaint's description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts." *Henderson v. Harris Cnty., Tex.*, 51 F.4th 125, 130 (5th Cir. 2022). Plausibly alleging a custom "requires similarity, specificity, and sufficiently numerous prior incidents." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 396 (5th Cir. 2017), *as revised* (Mar. 31, 2017).

Plaintiff's claims for municipal liability against the County and the Hospital are considered separately below.

### a. The County.[6]

The County first seeks dismissal of Plaintiff's *Monell* claims against it on the grounds that Plaintiff has failed to plausibly allege any underlying constitutional violations. (Docket Entry 71,

---

[6] In addition to suing the County, Plaintiff sues Sheriff Salazar "in his official capacity as Sheriff of Bexar County," specifically based on his role as "the final policymaker for jail operations." (Docket Entry 63, at 2.) These claims are redundant. "A claim against a municipal official in his or her official capacity is tantamount to a suit against the municipal entity." *Bustillos v. El Paso Cnty. Hosp. Dist.*, 226 F. Supp. 3d 778, 789 (W.D. Tex. 2016) (citing *Monell*), *aff'd*, 891 F.3d 214 (5th Cir. 2018). In other words, "the real party in interest is the municipality not the named official." *Adams v. Glaser*, 138 F. Supp. 3d 727, 740 (E.D. La. 2015). "Thus, when a plaintiff asserts claims against both the municipal entity and a municipal official in his or her official capacity, the Court can dismiss the official capacity claim as 'redundant' to the municipal-entity claim." *Bustillos*, 226 F. Supp. 3d at 789 (quoting *Sanders-Burns v. City of Plano*, 594 F.3d 366, 373 (5th Cir. 2010)). Accordingly, as Plaintiff's claims against Sheriff Salazar are duplicative of its claims against the County, the Court may dismiss those claims as redundant.

at 8–10.)  "[E]very *Monell* claim requires an underlying constitutional violation." *Hicks-Fields*, 860 F.3d at 808.  In this case, the underlying constitutional violations Plaintiff alleges are that the County violated Ellison's Fourteenth Amendment[7] rights by "refus[ing] to provide timely medical care or protect[ion]."  (Docket Entry 63, at 20.)

"[P]retrial detainees are entitled to protection from harm as well as needed medical care," *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 641 (5th Cir. 1996) (en banc), and "[a] municipality may be liable under . . . § 1983 for the violation of these rights," *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019).  "When attributing violations of pretrial detainees' rights to municipalities, the cause of those violations is characterized either as a condition of confinement or as an episodic act or omission." *Id.*  "Cases of the former are attacks on general conditions, practices, rules, or restrictions of pretrial confinement." *Id.* (citation modified).  "In cases of the latter, the complained-of harm is a particular act or omission of one or more officials, and an actor usually is interposed between the detainee and the municipality." *Id.* (citation modified).

"In a case challenging conditions of confinement, the proper inquiry is whether those conditions amount to punishment of the detainee." *Garza*, 922 F.3d at 632.  If a condition "is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment[,] [which] may not constitutionally be inflicted upon detainees *qua* detainees." *Id.*  "A condition may take the form of a rule, a restriction, an identifiable intended condition or practice, or acts or omissions by a jail official that

---

7 In passing, Plaintiff also invokes the Eighth Amendment in its Seventh Amended Complaint. (*See* Docket Entry 63, at 20.) The Eighth Amendment is inapplicable here, as Ellison was a pretrial detainee rather than a convicted prisoner. (*Id.* at 4.) "Pretrial detainees and convicted prisoners . . . look to different constitutional provisions for their respective rights to basic need such as medical care and safety"—the Fourteenth and Eighth Amendments, respectively. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc). Thus, to the extent Plaintiff intended to bring a separate Eighth Amendment claim, it should be dismissed.

are sufficiently extended or pervasive." *Id.* (citation modified). To amount to punishment, a condition "must be not reasonably related to a legitimate governmental objective and must cause the inmate's constitutional deprivation." *Id.* (citation modified). "The effective management of the detention facility is a valid objective that may justify imposition of conditions and restrictions of pretrial detention." *Shepherd v. Dall. Cnty.*, 591 F.3d 445, 453 (5th Cir. 2009).

"To establish municipal liability in an episodic-act case, a plaintiff must show (1) that the municipal employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." *Garza*, 922 F.3d at 634 (citation modified). An official does not act or fail to act with subjective deliberate indifference "unless the official knows of and disregards an excessive risk to inmate safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 635. "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017).

The Seventh Amended Complaint does not specify whether Plaintiff's underlying failure-to-protect and inadequate-medical-care claims fall under a conditions or episodic theory. But in its response to the County's motion, Plaintiff concedes that it can only avoid dismissal if it "show[s] deliberate indifference to a substantial risk of harm . . . on the part of jail officials— whether from other inmates or from known medical conditions." (Docket Entry 76, at 20.) The undersigned therefore construes Plaintiff's Seventh Amended Complaint as alleging *episodic* failures to protect or provide adequate medical care. *See Carswell v. Hunt Cnty., Tex.*, No. 3:20-CV-2935-N, 2026 WL 682674, at *2 (N.D. Tex. Mar. 9, 2026) ("[A] showing of deliberate

16

indifference is not required for a conditions-of-confinement claim.") (collecting cases). Accordingly, "to prove an underlying constitutional violation," Plaintiff "must establish that an official acted with *subjective* deliberate indifference;" if Plaintiff manages to do that, then it "has proved a violation of [Ellison's] rights under the Due Process Clause." *Hare*, 74 F.3d at 649 n.4.

Guided by these principles, this Report and Recommendation first turns to the failure to protect before considering the adequacy of the medical care provided to Ellison.

i.   Failure to protect.

To prevail on an episodic "failure-to-protect claim, a plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm and that jail officials were deliberately indifferent to his need for protection." *Feliz v. El Paso Cnty.*, 441 F. Supp. 3d 488, 502–03 (W.D. Tex. 2020) (citation modified). Here, Plaintiff alleges that "[j]ail staff documented [Ellison's] mental health conditions" upon his intake, having already "had records of [Ellison's] mental illness . . . due to his prior incarcerations." (Docket Entry 63, at 5.) Plaintiff further alleges that the jail records "indicate[d] that during [Ellison's] last incarceration he was assaulted by another inmate" (*id.* at 5), though there are no allegations that the assailant was an inmate during Ellison's latest detention. Notwithstanding the foregoing, Plaintiff alleges, jail staff classified him as "medium-low custody level and placed [him] within the general population of the jail." (*Id.*) And as a result of that misclassification, Plaintiff alleges that "Ellison sustained multiple injuries consistent with assault," including "a swollen face, impaired vision, and fractured ribs." (*Id.* at 6.)

Even accepting these allegations as true, they do not state a constitutional violation. "To state a claim, . . . [Plaintiff] must allege that [a specific jailer's] misclassification of [Ellison] was due to deliberate indifference[;] [t]hat is, [Plaintiff] must allege that they knew of and disregarded a substantial risk of serious harm." *Alderson*, 848 F.3d at 420. But, as previously noted, Plaintiff

17

does not make specific allegations against specific officers.    Plaintiff's general "allegation that ['jail staff'] had knowledge of [Ellison's] danger is not a sufficient allegation that any *specific defendant* had knowledge of a substantial risk of serious harm to [Ellison] based upon his classification."  *Id.* (emphasis added); *see Estate of Henson v. Wichita Cnty., Tex.*, 795 F.3d 456, 463 (5th Cir. 2015) ("An episodic acts-or-omissions claim . . . faults *specific jail officials* for their acts or omissions.") (emphasis added).

Additionally, as likewise noted above, the jail records—which Plaintiff incorporates into its Seventh Amended Complaint by reference and which are central to its claims—show that jail staff did not knowingly disregard Ellison's safety.  To the contrary, they transferred him to a different kind of cell in July of 2022 because of his mental health condition—after he had been observed "throwing paper at other inmates and trying to take their property" because he believed that "Martin Luther King told [him] to do it"—and they kept him there for the remainder of his detention under "mental observation."  (Docket Entry 71-1, at 3.)  Thus, even if Plaintiff pointed to specific officers who initially misclassified Ellison, that misclassification was remedied months before he sustained his injuries.[8]

In short, based on Plaintiff's factual allegations—including the incorporated materials— the undersigned cannot reasonably infer that any jail officials knowingly disregarded a substantial risk of serious harm to Ellison.  Accordingly, Plaintiff has not stated an underlying Fourteenth Amendment violation based on an episodic failure to protect.

---

[8] The undersigned also notes that Ellison's Autopsy Report—which Plaintiff incorporates into the Seventh Amended Complaint—states that the injury to Ellison's face could have been a result of his collapsing in his cell as a result of his infection, and that the fracturing of his ribs were "CPR related," rather than the result of any assault. (Docket Entry 71-3, at 2, 5.) The probable cause of death was determined to be "sepsis due to cellulitis of the right orbit and right side of the face." (*Id.* at 5.)  But this factual issue need not be addressed by the Court.

ii.    Inadequate medical care.

"For an episodic act claim relying on an alleged denial or delay of medical care, a detainee can show deliberate indifference by demonstrating that an official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Feliz*, 441 F. Supp. 3d at 502–03 (citation modified).  In the Seventh Amended Complaint, Plaintiff alleges that, "[r]ather than providing treatment" after Ellison "was visibly assaulted," jail staff "returned him to his cell without intervention." (Docket Entry 63, at 15.)  Plaintiff also alleges that Ellison "was denied antipsychotic medications and therapy sessions." (*Id.* at 23.)

Plaintiff's allegation that jail staff observed Ellison's assault and then returned him to his cell without any medical treatment is contradicted by the records Plaintiff incorporates into the Seventh Amended Complaint.  (*See* Docket Entry 63, at 6.)  The jail incident report states that staff initiated a "Code 1"—a type of "Medical" measure—on December 4, 2022, at 8:15 P.M., after Ellison was discovered unresponsive in his cell.  (Docket Entry 71-2, at 2.)  Upon observing "a contusion to his right eye[,] [Ellison] was sent to the hospital where he was taken into surgery." (*Id.*)  Ellison told one of the responding officers "that he was assaulted 'yesterday' December 03, 2022[,] but did not say what shift or who assaulted him." (*Id.*)  Based on the records that Plaintiff incorporated into the pleadings, the undersigned cannot draw the reasonable inference that "any specific defendant," *Alderson*, 848 F.3d at 420, or "specific jail officials," *Estate of Henson*, 795 F.3d at 463, "refused to treat [Ellison], ignored his complaints, intentionally treated him incorrectly," or otherwise "wanton[ly] disregard[ed] . . . [his] serious medical needs," *Feliz*, 441 F. Supp. 3d at 502–03, with respect to injuries he claimed to have sustained on December 3, 2022.

19

Plaintiff's allegation that jail staff denied Ellison's requests for antipsychotic medication similarly lacks the requisite precision for an episodic violation. *See Estate of Henson*, 795 F.3d 463 (episodic acts-or-omissions claim must fault specific jail officials). And while "the denial of recommended medical treatment is often sufficient to show deliberate indifference," *Feliz*, 441 F. Supp. 3d at 503 (citation omitted), Plaintiff nowhere alleges—nor do the incorporated records indicate—that Ellison had been prescribed or recommended any medications that the jail staff allegedly refused to give him. Finally, "denial of medical care is only actionable if it results in substantial harm," *id.* (citing *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006)), and Plaintiff nowhere alleges that Ellison's lack of certain antipsychotic medications caused any of his injuries. In short, based on Plaintiff's well-pleaded factual allegations—including the materials incorporated into the Seventh Amended Complaint by reference—the undersigned cannot reasonably infer that any specific jail officials acted with subjective deliberate indifference by providing Ellison with inadequate medical care. Accordingly Plaintiff has not plausibly alleged an underlying constitutional violation by any jail staff or officials. And since "every *Monell* claim requires an underlying constitutional violation," *Hicks-Fields*, 860 F.3d at 808, Plaintiff's § 1983 claims against the County should be dismissed.

b.  The Hospital.

Plaintiff's only allegation against the Hospital to support a § 1983 claim is that it "maintained policies, practices, and customs of (a) failing to ensure that detainees with evident medical and mental health needs were properly classified and housed for their safety, and (b) delaying or denying necessary medical evaluation and treatment after serious injuries." (Docket Entry 63, at 21.)

20

As already discussed *supra*, the first claim does not apply to the Hospital.  As the Hospital points out, "Texas law specifically imposes the duty on the Sheriff of each county to 'safely keep all prisoners committed to the jail.'"  (Docket Entry 66, at 6 (quoting TEX. LOCAL GOV'T CODE § 351.041).)   Thus, Defendant Sheriff Salazar is the final policymaker with respect to the classification and housing of inmates at the Bexar County Jail. *See Gonzales v. Westbrook*, 118 F. Supp. 2d 728, 235 (W.D. Tex. 2000) ("[F]inal policymakers include those local officials who, by virtue of state law, hold nearly absolute sway over the particular task or areas of responsibility entrusted to them.").  As a *Monell* claim requires "an official policymaker . . . act[ing] on behalf of the municipality," *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 497 (5th Cir. 2021), Plaintiff cannot assert a *Monell* claim against the Hospital predicated on how the jail classified and housed Ellison.

As to the second alleged policy or custom—*i.e.*, a policy or custom of delaying necessary medical evaluation or treatment for patients with serious injuries—the Hospital argues that Plaintiff fails to allege that any of its employees were "actually aware of Ellison's injuries" or their severity but "nevertheless delayed medical evaluation and treatment." (Docket Entry 66, at 7.)  In other words, the Hospital argues that Plaintiff failed to allege a constitutional violation.  Its argument is well taken.  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Instead, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id*.  Here, the only factual allegations regarding the Hospital's staff are that they first met Ellison at 9:16 P.M., on December 4, 2022—when he was admitted to the emergency room for an "eye injury" causing swelling and "decreased vision"—and that he died there five hours later. (*Id.* at 7–8.)  These bare facts do not support a reasonable inference that any of the

Hospital's staff acted with deliberate indifference in treating Ellison. And absent such indifference—even assuming that the Hospital's staff negligently treated Ellison—mere "allegations of medical malpractice are insufficient." *Goosby v. Clark*, No. 3:23-cv-50, 2024 WL 3225570, at *7 (S.D. Tex. May 20, 2024), *appeal dismissed*, No. 24-40445, 2025 WL 548265 (5th Cir. Feb. 19, 2025).

Accordingly, Plaintiff's § 1983 claims against the Hospital should likewise be dismissed.

## V.      Conclusion and Recommendation.

Based on the foregoing, I recommend that the Hospital's Rule 12(b)(6) Motion to Dismiss Seventh Amended Complaint or in the Alternative 12(c) Motion for Judgement on the Pleadings (Docket Entry 66) be **GRANTED**, that the Officer Defendants' Motion to Dismiss Plaintiff's Seventh Amended Complaint (Docket Entry 72) be **GRANTED**, and that the County's Motion to Dismiss Plaintiff's Seventh Amended Complaint (Docket Entry 71) be **GRANTED IN PART** and **DENIED IN PART**.

The claims against the Hospital, Sheriff Salazar, the Officer Defendants, and the Doe Defendants should be **DISMISSED WITH PREJUDICE**. The claims against the County should also be **DISMISSED WITH PREJUDICE**, with the exception of Plaintiff's ADA and Rehab Act discrimination claims based on the County's alleged failure to provide Ellison with antipsychotic medications and therapy sessions.

## VI.      Notice of Right to Object.

The Clerk of the Court shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this Report and Recommendation must be filed

**within 14 days** after being served with a copy of the same, unless this time period is modified by the District Court. 28 U.S.C. § 636(b)(1); Fᴇᴅ. R. Cɪᴠ. P. 72(b).

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties. An objecting party must specifically identify the findings, conclusions, or recommendations to which objections are being made and the basis for such objections; objections that are frivolous, conclusory, or general in nature may be disregarded. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on May 18, 2026.

Henry J. Bemporad
United States Magistrate Judge

23